# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **SON NGUYEN** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:11-CV-151** |
| | § | |
| **CAROLYN RIDLING,** | § | |
| **TEXOMA MEDICAL CENTER, INC.,** | § | |
| **UHS OF TEXOMA, INC.,** | § | |
| **W. MACKEY WATKINS, and** | § | |
| **JAN JOHNSON** | § | |

## REPORT AND RECOMMENDATION OF UNITED STATES
## MAGISTRATE JUDGE

Now before the Court are Defendant Carolyn Ridling's Second Rule 12(b)(6) Motion to Dismiss (Dkt. 31) and Defendants Texoma Medical Center, UHS of Texoma, Inc., W. Mackey Watkins and Jan Johnson's Second Rule 12(b)(6) Motion to Dismiss (Dkt. 32). As set forth below, the Court finds that the motions should be GRANTED in part and DENIED in part.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This suit arises out of an October 9, 2006 sexual assault examination of Plaintiff's daughter which led to a December 13, 2006 indictment for aggravated sexual assault of a child against Plaintiff. The exam was conducted by Ridling, a nurse, who was employed by Defendant Texoma Medical Center when she performed the exam on Plaintiff's daughter. Defendant Watkins was Texoma's Chief Executive Officer and Defendant Johnson was the Director of Nursing at the time. On November 1, 2007, Plaintiff was convicted of the charges and received a 20-year sentence. It

was subsequently determined that Ridling was not certified to conduct the exams which led her to reach her conclusions as to sexual abuse.

On March 24, 2009, the Dallas Fifth Circuit Court of Appeals issued an opinion reversing Plaintiff's conviction and finding that Defendant Ridling "created the false impression to the jury that she was a certified SANE nurse," that she "falsely testified that she was authorized by the ANA and the IAFN to perform SANE examinations" and that her testimony "would have led a reasonable jury to conclude she was better trained (and thus more adept) at determining whether D.N. had been sexually abused than she was." Dkt. 16 at ¶ 32.

This suit was filed on March 23, 2011. In Plaintiff's Original Complaint, he asserted claims of violations of 42 U.S.C. § 1983, intentional infliction of emotional distress, negligent hiring, supervision, training or retention, and fraudulent concealment against Defendants Carolyn Ridling, Defendant Texoma Center, Inc., UHS of Texoma, Inc., W. Mackey Watkins, and Jan Johnson. *See* Dkt. 1. On August 10, 2011, Plaintiff filed his First Amended Complaint, naming the same parties as Defendants. Plaintiff's amended complaint alleges claims of 42 U.S.C. § 1983 and negligent hiring, supervision, training or retention. In asserting these claims, Plaintiff also pleads fraudulent concealment and respondeat superior.[1]

---

[1]Although Defendants argue that Plaintiff may still continue to assert a claim of intentional infliction of emotional distress, his complaint does not so indicate and he affirmatively states in a response to the motion to dismiss that "Plaintiff has dismissed his intentional infliction of emotional distress claim asserted under Texas law." *See* Dkt. 35 at 18. He will be so bound, and the Court considers the claim dismissed.

In his allegations under Section 1983, Plaintiff alleges the following:

> Ridling violated the Constitutional due process and fair trial rights of Nguyen under the 14th Amendment when she fabricated incriminating evidence against him at and following the October 9, 2006 examination of DN.  Ridling had to have known her conduct in stating she was a certified SANE nurse in her report was wrong and in violation of existing legal standards.  Her claim to a false certification was undoubtedly knowing and necessarily with malice, given the importance of that certification to her work and role for the state.  Her lies in claiming SANE certification were undoubtedly calculated to influence the indictment of Plaintiff.  Furthermore, her flawed methodology, likely due to her failure to keep up with current standards and proper training, led her to make false conclusions in the examination report.  Her wrongful acts led to Nguyen's arrest and indictment.  TMC, Watkins, and Johnson are liable for these violations as supervisors, as they completely failed to exercise the required supervision.

Dkt. 16 at ¶42.

All named Defendants have appeared herein and filed motions seeking to dismiss Plaintiff's claims on various grounds.  First, Defendants argue that Plaintiff's state law claims are barred by the statute of limitations.  Next, Defendants argue that Plaintiff's claim under 42 U.S.C. § 1983 fails because they are not state actors.  Finally, Defendants argue that they are immune from liability.

## STANDARD FOR MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  The Court must accept as true all well-pleaded facts contained in the complaint and view them in the light most favorable to the pleader.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  A claim will survive an attack under Rule 12(b)(6) if it "may be supported by showing any set of

facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, 127 S. Ct. 1955, 1969, 167 L. Ed.2d 929 (2007).  In other words, a claim may not be dismissed based solely on a court's supposition that the pleader is unlikely "to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id*. at 563 n.8.

Although detailed factual allegations are not required, a claimant must provide the grounds of his entitlement to relief beyond mere "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555.  The complaint must be factually suggestive, so as to "raise a right to relief above the speculative level" and into the "realm of plausible liability." *Id*. at 555, 557 n.5.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955)).  For a claim to have facial plausibility, a claimant must plead facts that allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).  Therefore, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Id*. (internal quotations omitted).

**ANALYSIS**

**_Statute of Limitations as to State Law Claims_**[2]

The Court first turns to whether Plaintiff's state law claims of negligent hiring, supervision, and training or retention against Defendants TMC/UHS, Watkins and Johnson are barred by the statute of limitations.  Essentially, Plaintiff argues that those Defendants breached their duty to hire, train and retain competent employees by allowing Ridling to work as a SANE nurse with an expired certification.  Plaintiff further alleges that all Defendants fraudulently concealed his state law claims because they had knowledge that Ridling held herself out as a certified SANE nurse, that TMC/UHS held her out as such at least until October 2007, and that Defendants continue to attempt to conceal their actions by permitting Ridling's continued employment at TMC/UHS.

Defendants argue that the latest Plaintiff could have known of the wrongful act here was the date Ridling falsely testified at the state court trial – October 23, 2007.  October 23, 2007, therefore, is the date Defendants argue that Plaintiff's claims accrued.  Defendants claim that there are no new

---

[2]The Court notes that Plaintiff's responses to the motions to dismiss also address the statute of limitations as to the Section 1983 claims.  Defendants' motions, however, do not appear to challenge Plaintiff's Section 1983 claims based on a statute of limitations argument.  Nonetheless, the Court agrees with Plaintiff that the limitations period for his 14th Amendment claims do not accrue until the criminal proceedings are concluded in his favor.  _Price v. City of San Antonio, Tex._, 431 F.3d 890, 894 (5th Cir. 2005).  _See also Humphreys v. City of Ganado, Tex._, 2012 WL 1003573, 2 (5th Cir. 2012); _Aly v. City of Lake Jackson_, 453 Fed. Appx. 538, 539, 2011 WL 6270674, 1 (5th Cir. 2011).  The Court has reviewed Plaintiff's First Amended Complaint and finds that Plaintiff has stated facts that would show that his claims under Section 1983 are essentially part of the claims arising out of his prosecution and did not accrue until the Court of Appeals reversed his conviction in his favor and made a finding that Ridling offered false testimony.  Therefore, to the extent Defendants' motions seek dismissal on this basis, the motions should be denied.

5

accrual dates based on the conviction or the reversal of Plaintiff's conviction by the Dallas Fifth Court of Appeals.  While the Court does not agree with Defendants that the facts stated necessarily indicate an accrual date as early as October 2007, the Court does find that Plaintiff's allegations indicate that Plaintiff's state law claims accrued no later than the end of January 2008.

It is not specifically stated in the pleadings before the Court when Ridling's lack of SANE certification was originally discovered by Plaintiff.  However, according to Plaintiff's complaint, on December 17, 2007 "the executive director of the International Association of Forensic Nurses affirmed via affidavit that Ridling was not a member of that organization and not certified by that organization." Dkt. 16 at ¶31.  Plaintiff further alleges that, on January 11, 2008, an open letter from the District Attorney informed criminal defense attorneys to alert them of Ridling's lack of certification.  Dkt. 16 at ¶30.  Moreover, two footnotes in Plaintiff's First Amended Complaint also indicate that Ridling testified on January 20, 2008[3] during a hearing on the motion for new trial in Plaintiff's criminal case that she had not been keeping up with current training standards for her practice and invoked her 5th Amendment rights when asked questions about her SANE certification. Dkt. 16 at ¶43 & 59.[4]

---

[3]The Court notes that the footnote actually cites to a date in January 2007, which would have occurred *prior* to Plaintiff's trial.  Therefore, the Court assumes the reference to 2007 was a typographical error and that the motion for new trial occurred in January 2008 after the November 2007 trial.  Either date would result in a limitations bar.

[4]Although the complaint cites to the transcript from this hearing, the Court cannot find such transcript in the record herein.

Under Texas law – which governs the accrual of Plaintiff's state law claims here – fraudulent concealment does not bar limitations when the plaintiff discovers the wrong or could have discovered it through the exercise of reasonable diligence. *Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008). Based on the facts alleged by Plaintiff, therefore, it appears that Plaintiff knew or should have known through the exercise of reasonable diligence of Ridling's failures to maintain certain training standards and her lack of certification no later than January 20, 2008, when Ridling testified at the hearing on the motion for new trial.  At this time, Plaintiff knew or should have known of  Defendants TMC/UHS, Watkins and Johnson's alleged failure to supervise and train Ridling.

Because, in Texas, any negligence action must have been brought within two years of accrual, *see* Tex. Civ. Prac. & Rem. Code § 16.003, and Plaintiff did not file this suit until March 23, 2011 – more than three years and two months after learning of Ridling's lack of proper training – the state law claims of negligent hiring, supervision, and training or retention against Defendants TMC/UHS, Watkins and Johnson are barred by the statute of limitations and should be dismissed. The motions to dismiss those claims should be GRANTED.

### *State Actors and Section 1983*

Next, the Court turns to Defendants' argument that Plaintiff has not stated a Section 1983 claim against them because they are not state actors.  To state a constitutional claim for relief under Section 1983, a plaintiff must allege a violation of a constitutional right and a violation of that right by one or more state actors. *Johnson v. Dallas Indep. Sch. Dist.,* 38 F.3d 198, 200 (5th Cir. 1994). To be a state actor subject to liability under Section 1983, the defendant must be a person who acts

"under color of any statute ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia." 42 U.S.C. §1983.  The Supreme Court has formulated a two-part approach to the issue of state action:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.  This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

In *Cornish v. Correctional Services Corp.*, the Fifth Circuit provided the following explanation for the number of tests used to determine whether a private actor's conduct can be attributable to the state such that the private actor can be deemed a state actor for purposes of liability under Section 1983:

> The "public function test" examines whether the private entity performs a function which is "exclusively reserved to the State."  Under the "state compulsion test," a private actor's conduct is attributable to the State when it exerts coercive power over the private entity or provides significant encouragement.  The "nexus" or "state action test" considers whether the State has inserted itself into a position of interdependence with the private actor, such that it was a joint participant in the enterprise.  And, under the "joint action test," private actors will be considered state actors where they are willful participants in joint action with the State or its agents.  The Supreme Court has not resolved whether these different tests are actually different in operation or simply different ways of characterizing this necessarily fact-bound inquiry.

*Cornish v. Correctional Servs. Corp.*,  402 F.3d 545, 549-50 (5th Cir. 2005) (internal citations and quotations omitted).

Having considered the Supreme Court's and Fifth Circuit's parameters, the Court finds Plaintiff has alleged sufficient facts in support of his argument that Defendants Ridling and TMC/UHS were state actors.  In arguing that the purpose of Ridling's exam of his daughter was to collect evidence to act in concert with the state to prosecute sexual assault crimes, Plaintiff alleges that Ridling was trained by the state, that her position was funded by the state and that she worked in conjunction with Texas law enforcement to prosecute state criminal cases.  Dkt. 16 at ¶45.  As to TMC/UHS, Plaintiff alleges that they received state funds to participate in the SANE programs to collect evidence in support of the prosecution of sexual assault cases.  Dkt. 16 at ¶50.  Plaintiff has alleged – and it does not appear disputed – that the state had an agreement with TMC/UHS to conduct sexual assault exams and Plaintiff has alleged that the manner in which the exam was conducted resulted in a violation of his rights.

The Court finds that Plaintiff's allegations here are more than that Defendants TMC/UHS were engaged to perform a state contract, Plaintiff has alleged facts as to these Defendants that would show "a sufficiently close nexus between the State and *the challenged action* of the regulated entity." *Cornish v. Correctional Services Corp.*, 402 F.3d 545, 550 (5th Cir. 2005).   Essentially Plaintiff alleges that Ridling was "charged by the State of Texas to collect evidence in support of a prosecution and to make a report specifically in aim of a criminal prosecution."  Dkt. 36 at 9.  The allegations that Defendants were charged with collecting evidence in conjunction with a state prosecution are sufficient to state a nexus between the state and the sexual assault exam report. While the Court declines to make a finding as whether Defendants Ridling and TMC/UHS were state actors at this phase of the proceedings, the Court finds that such allegations are sufficient to state that

they were acting under the color of state law in the administration of the sexual assault examination and that Plaintiff's Section 1983 claims should therefore not be dismissed at this time.

Moreover, although no facts have been alleged as to Defendants Watkins or Johnson individually that would make them state actors, the Court finds that sufficient facts have been alleged as to their liability as Ridling's supervisors under Section 1983.  The Fifth Circuit has recently explained supervisory liability under Section 1983 as follows:

> A supervisory official may be held liable only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury.  In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates.  A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights.  A supervisor may also be liable for failure to supervise or train if: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.
>
> Liability for failure to promulgate policy and failure to train or supervise both require that the defendant have acted with deliberate indifference.

*Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (internal citations and quotations omitted).

In his complaint, Plaintiff has alleged that Ridling was supervised by Watkins and Johnson during the time she conducted SANE examinations, Dkt. 16 at ¶17, that Watkins and Johnson failed to adequately monitor Ridling's conduct and qualifications, failed to review her written findings, failed to adequately supervise her, allowed her to continue to perform exams with information that she was not qualified, Dkt. 16 at ¶33-36, and that they acted with deliberate indifference.  Dkt. 16

10

at ¶35.  Plaintiff further alleges that Defendants knew or should have known as early as 2004 that Ridling was not certified and concealed that fact from others.  Dkt. 16 at ¶ 38.  The Court finds Plaintiff has adequately stated facts for supervisory liability under Section 1983 and the claims against them should not be dismissed at this time.

## *Immunity*

Finally, Defendants argue that they are immune from suit under the Texas Family Code and principles of federal qualified immunity.  The Court declines to dismiss Plaintiff's claims based on Defendants' motions.

First, Defendants cite to Section 261.106 of the Texas Family Code to argue that they are immune from any claims.  That statute provides:

> A person acting in good faith who reports or assists in the investigation of a report of alleged child abuse or neglect or who testifies or otherwise participates in a judicial proceeding arising from a report, petition, or investigation of alleged child abuse or neglect is immune from civil or criminal liability that might otherwise be incurred or imposed.

TEX. FAM. CODE § 261.106(a).  The statute continues to state that "[a] person who reports the person's own abuse or neglect of a child or who acts in bad faith or with malicious purpose in reporting alleged child abuse or neglect is not immune from civil or criminal liability." TEX. FAM. CODE § 261.106(c).  Thus, "[t]o be entitled to immunity, one must have assisted in the investigation of the report in good faith." *Rodriguez v. State*, 47 S.W.3d 86, 89 (Tex. App.– Houston [14 Dist.] 2001, pet. ref'd).

The Court finds that Plaintiff here has stated sufficient facts that Defendants did not act in good faith.  Therefore, Defendants are not entitled to dismissal as a matter of law based on the statutory immunity defense.  *See, e.g. Howard v. White*, 2002 WL 1470071, 6 (Tex. App. – Dallas 2002, no pet.) (mother failed to establish that she was entitled to summary judgment under the Family Code immunity provision because she did not present any evidence that her report was made in good faith).  Such an issue is reserved for summary judgment or trial, and the motion to dismiss on that grounds should be DENIED.

The Court is further not convinced that the claims against Defendants should be dismissed on some other general grounds of qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 129 S. Ct. 808, 815, 172 L. Ed.2d 565 (2009) (citations omitted). For an official to face liability, the qualified immunity inquiry involves two prongs: (1) whether a defendant's conduct violated a constitutional right, and (2) whether a defendant's conduct was objectively unreasonable in light of clearly established law at the time of the violation.  *Id.* at 232, 129 S. Ct. at 816.  Here, Plaintiff's complaint does state facts that give rise to constitutional violations and objectively unreasonable conduct, and Defendants have not offered any authority that would indicate that dismissal is appropriate at this phase of the proceedings.  The motion to dismiss based on qualified immunity should be DENIED.

The Section 1983 claims shall proceed.

12

## RECOMMENDATION

Therefore, for the reasons set forth herein, the Court finds that Defendant Carolyn Ridling's Second Rule 12(b)(6) Motion to Dismiss (Dkt. 31) and Defendants Texoma Medical Center, UHS of Texoma, Inc., W. Mackey Watkins and Jan Johnson's Second Rule 12(b)(6) Motion to Dismiss (Dkt. 32) should be GRANTED as to Plaintiff's state law claims of negligent hiring, supervision, training or retention and DENIED as to Plaintiff's claims under 42 U.S.C. § 1983 and that accordingly Plaintiff's claims of negligent hiring, supervision, training or retention should be dismissed for failure to state a claim and that Plaintiff's claims under 42 U.S.C. § 1983 shall proceed to summary judgment and/or trial.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.   28 U.S.C.A. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 29th day of August, 2012.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE

13